**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:                                              Case No. 6:11-bk-15112-KSJ
                                                    Chapter 11
Jesus Holiness Church, Inc.
        Debtor(s).
_____/

### FIRST BAPTIST CHURCH OF EUSTIS, INC.'S MOTION TO DISMISS

Movant, First Baptist Church of Eustis, Inc. ("First Baptist"), a secured creditor of

Debtor, Jesus Holiness Church, Inc. ("Debtor"), files this its Motion to Dismiss this

Chapter 11 bankruptcy proceeding pursuant to 11 U.S.C. §1112, and states:

### FACTS

1.      On October 4, 2011, Debtor filed a Voluntary Petition under Chapter 11 of

the Bankruptcy Code. (Document No. 1).

2.      Debtor's schedules list a single asset, consisting of real property and

improvements located in Eustis, Florida (the "Property"). (Document No. 1).

3.      Debtor's schedules list a single creditor, First Baptist. (Document No. 1).

First Baptist is the holder of a secured claim pursuant to a purchase money mortgage and

state court judgment of foreclosure.

4.      Debtor and First Baptist were the only two parties to a state court

foreclosure action, pending as Case Number 2011 CA 000978 in the Circuit Court of the

Fifth Judicial Circuit in and for Lake County, Florida. On July 6, 2011, the state court

entered a Summary Final Judgment of Foreclosure (the "Foreclosure Judgment"). See,

Proof of Claim #1. The Foreclosure Judgment directed a public sale of the Property to be

held on October 5, 2011. Debtor filed its Voluntary Petition the morning before the

scheduled sale date, and First Baptist immediately took steps to cancel the sale and stop enforcement pursuant to the automatic stay.

5.      Debtor has no employees and conducts no business. (Documents Nos. 35, 42 and 43).  Further, Debtor's schedules list no income. Debtor's most recent Amended Statement of Financial Affairs states: "Debtor has no income. It owns the building from which Jesus Holiness Pentecostal Church, Inc. conducts its church." (Document No. 29). Debtor's most recent Small Business Monthly Operating Reports, however, list income from "tithes" in the amount of $1,500.00 for both November and December. (Documents Nos. 42 and 43). This contradicts Debtor's Petition and Statements of Financial Affairs, as amended, as Debtor allegedly only owns the Property; a third party operates the church and presumably collects any tithes.

6.      Debtor's tenant, Jesus Holiness Pentecostal Church, Inc. ("Pentecostal") is apparently not paying any rent to Debtor, and simply conducts church services on the Property. (Document No. 29).  Debtor's most recent Amended Statement of Financial Affairs lists four officers and directors of Debtor: Frances M. Evans, Larry Bruce Evans, Jr., Patricia A. Tanner and Thelma O. Gates. (Document No. 29). These same four people are also listed as directors and officers on the Florida Department of State Division of Corporations "Sunbiz" filings for Pentecostal. In addition to Ms. Evans, Mr. Evans, Ms. Tanner and Ms. Gates, a fifth director/officer, Rashelle Tanner of Bellevue, Washington, is listed on the "Sunbiz" filing for both Debtor and Pentecostal and in Debtor's Chapter 11 Case Management Summary (Document No. 13). Pentacostal is clearly an insider and alter ego of Debtor.

2

2a166d446e2a3d75

7.      Debtor has reported no checking, savings or other financial accounts, and Debtor schedules list zero cash on hand in its schedules. (Document No. 1). During the §341 Meeting, however, Debtor discussed an account with over $20,000.00, but both the amount and ownership of the account are unclear. The question of this account was again raised by the U.S. Trustee during the initial Non-Evidentiary Status Conference, (Document No. 37), but Debtor still has not amended its schedules to include this account in the estate. Regardless, as of the date of this Motion, all three of the Small Business Monthly Operating Reports answer "yes" to item number 13 ("Do you have any bank accounts open other than the DIP account?), but none of the operating reports filed by Debtor have attached copies of the banks statements as required. (Documents Nos. 35, 42 and 43).

8.      Debtor's Statement of Financial Affairs states in part: "Debtor has no books or records. . . Frances M. Evans would be the best contact for any information concerning books and records or the lack thereof." (Document No. 1). Debtor's Counsel stated at the first Non-Evidentiary Status Conference that Debtor has been unable to obtain financing in the past because there is no record of income (Document No. 37). Debtor's subsequent filings have shown no indication that Debtor has rectified this problem, and Debtor's counsel explained at the last Status Conference, held on January 25, 2012, that Debtor still had not provided financial documents to counsel. (Document No. 44).

9.      Since filing the Voluntary Petition, Debtor has filed  multiple Amended Petitions and an Amended Statement of Financial Affairs. (Documents Nos. 24, 27, 28, 29 and 32). None of the Amendments add any property to the Estate or any creditors or

claims. Blaringly absent from all of the Amendments is the account identified by Debtor

at the Meeting of Creditors and raised again by the U.S. Trustee at the initial Status

Conference.

10.    As of the date of this Motion, Debtor has not filed a proposed plan of

reorganization, though Debtor has requested additional time to file a plan. (Document

No. 46). Even though Debtor has not submitted a proposed plan, Debtor has repeatedly

stated its intentions in its various filings. As stated in Debtor's Motion for Extension of

Time, ". . . Debtor is attempting to refinance the loan which will pay the only creditor in

this Bankruptcy in full. The Debtor is making diligent effort to obtain the financing."

(Document No. 46). This purported goal is consistent with Debtor's Case Management

Summary, wherein Debtor stated in full:

> **3.    Reasons for Filing Chapter 11:**
> The purpose of the filing of the Chapter 11 case was to stop the
> foreclosure of the real property located at 719 East Orange Ave.,
> Eustis, FL 32726. When the balloon note and mortgage on the
> property ballooned in February 2011, the debtor did not make the
> balloon    payment    and    the    mortgage    holder    commenced
> foreclosure. Final Judgment was entered on July 6, 2011 and the
> foreclosure sale was scheduled for October 5, 2011. The Debtor
> believes they can obtain financing to pay off the mortgage within
> 90 days. If the Debtor is unable to payoff the mortgage within 90
> days, the Debtor can make monthly interest and principal
> payments for the duration of the Bankruptcy and will give the
> Debtor additional time to obtain financing to pay off the balance
> within 5 years. The property has substantial equity.

(Document No. 13).

## MEMORANDUM OF LAW

11.    Debtor's Chapter 11 case should be dismissed for "cause" pursuant to

§1112(b)(1) of the Bankurptcy Code, which provides:

> (b)(1) Except as provided in paragraph (2) of this subsection,
> subsection (c) of this section, and section 1104(a)(3), on request of a

> party in interest, and after notice and a hearing, absent unusual
> circumstances specifically identified by the court that establish that
> the requested conversion or dismissal is not in the best interests of
> creditors and the estate, the court shall convert a case under this
> chapter to a case under chapter 7 or dismiss a case under this
> chapter, whichever is in the best interests of creditors and the estate,
> if the movant establishes cause.

11 U.S.C. §1112(b)(1). In the instant case, cause for dismissal exists due to: (1) Debtor's

lack of good faith; (2) the substantial and continuing loss to or diminution of the estate;

and (3) Debtor's inability to effectuate a plan.

**Lack of Good Faith**

12.    A debtor's lack of good faith is generally recognized as an independent

basis for dismissal under §1112(b)(1), because good faith is an implicit requirement for

every Chapter 11 petition. In re Schultz, 436 B.R. 170, 175 (Bankr. M.D. Fla. 2010). "It

is well-settled that the court may dismiss a Chapter 11 case, thus pre-empting the plan

approval process, if the debtor is unable to achieve confirmation or if the petition itself

was filed for an improper purpose, such as filing to halt a creditor's collection efforts

without the intent or ability to reorganize." In re Lezdey, 332 B.R. 217, 218 (Bankr. M.D.

Fla. 2005).

13.    There is no particular test for determining whether a debtor has filed its

petition in bad faith, although several circumstantial factors occurring together may be

indicative of a bad faith filing. See, Colonial Daytona Ltd. P'ship v. Am. Sav. of Florida,

F.S.B., 152 B.R. 996, 1001 (M.D. Fla. 1993). Courts may consider any factors which

evidence intent to abuse the judicial process and the purposes of the Bankruptcy Code's

reorganization provisions, and the Court has judicial discretion to evaluate the totality of

the circumstances in each case and to determine if those circumstances indicate a bad

faith filing by the debtor. Id. at 1003.

14.     To determine whether to dismiss for bad faith, courts have considered whether the debtor has: (1) only a single asset; (2) few employees, if any; (3) lack of adequate cash flow; (4) inadequate sources of income to sustain a plan of reorganization; (5) few unsecured creditors whose claims are relatively small; (6) a dispute with one other creditor; and (7) engaged in wrongdoing. <u>Lezdey</u> 332 B.R. at 222 (citing <u>In re Phoenix Piccadilly, Ltd.</u>, 849 F. 2d 1393 (11th Cir. 1988)).

15.     A review of Debtor's filings in this case indisputably shows that Debtor meets six of the seven "bad faith" factors discussed in <u>Lezdey</u>. Specifically, this case involves: (1) a single, non-income producing asset; (2) zero employees; (3) lack of adequate cash flow; (4) inadequate sources of income to sustain any plan of reorganization; (5) zero unsecured creditors; and (6) a two party dispute between Debtor and its only creditor, First Baptist.

16.     An additional relevant factor was discussed in <u>Colonial Daytona</u>, supra, wherein the Bankruptcy Court made the following finding of fact:

> 6) The Debtor's case presents no realistic possibility of effective reorganization, in that the Debtor's sole asset is highly overleveraged and not generating enough revenue to fund either its debt service or reorganization. *Further, the Debtor's hopes for confirmation of its Plan of Reorganization were dependent on precarious events such as the Debtor's ability to (a) successfully use the cramdown provisions of the Bankruptcy Code and (b) obtain new infusions of cash from limited partners whose status as continuing partners was in question.*

<u>Colonial Daytona</u>, 152 B.R. at 1001 (emphasis added). As was the case in <u>Colonial Daytona</u>, Debtor's case has no realistic possibility of effective reorganization, as Debtor's sole asset is not generating enough revenue to fund either debt service or reorganization. Similarly, Debtor's "plan" is speculative and dependent on "precarious" events. Debtor's stated goal in this Chapter 11 case is to delay First Baptist long enough so that Debtor

may obtain financing in order to pay First Baptist in full. (Document No. 13). Debtor has even suggested that First Baptist may have to wait five years while Debtor attempts to reorganize and obtain financing. (Document No. 13). Debtor has been unable to obtain financing in the past because of a complete lack of financial records and income; those factors have not changed since the initial filing in this case. Debtor bases the entire likelihood of a successful reorganization on the speculative possibility of a potential third party offering financing to an entity, Debtor, with no income and no financial records.

17. Finally, Debtor's failure to include the account identified during the §341 meeting is indicative of Debtor's lack of good faith. Debtor has amended its Petition and Statement of Financial Affairs no less than three times as of the date of this Motion, and the account has still not been included in the Bankruptcy estate. The undisputed facts as evidenced by Debtor's filings thus far are indicative of a petition filed in bad faith.

**Diminution in Value 11 U.S.C. § 1112(b)(4)(A)**

18. §1112(b)(4) sets forth a nonexhaustive list of grounds that may constitute "cause" for dismissal. 11 U.S.C. §1112(b)(4); see also, Shultz, 436 B.R. at 175. The first ground listed is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. §1112(b)(4)(A).

19. First Baptist has immediate concerns regarding the continuing deterioration of the Property. It has become clear, based on First Baptist's post Petition inspections of the Property and Debtor's filings to date, that Debtor lacks the ability and intention to properly protect the estate throughout the pendency of any plan. Debtor has no income to commit to the maintenance of Debtor's only asset. Not only are reserves needed to protect against the continuing diminution of the Property, but immediate

maintenance is required to protect First Baptist's interest in the Property. Without income to commit to the maintenance and protection of the Property, there is no reasonable likelihood of rehabilitation.

**Debtor Lacks the Ability to Effectuate a Plan**

20.    A Chapter 11 case may also be dismissed or converted for "cause" if the debtor lacks the ability to effectuate a plan. 11 U.S.C. § 1112(b)(2); see also, Lezdey 332 B.R. at 222. Specifically, if Debtor objects to dismissal, Debtor must establish that there is a reasonable likelihood that a plan will be confirmed within the timeframes established in §§ 1121(e) and 1129(3), or if such sections do not apply, within a reasonable period of time. 11 U.S.C. §1112(b)(2). Debtor can not establish such a reasonable likelihood of a confirmed plan.

21.    As discussed above, Debtor only seeks to delay First Baptist in order to attempt to obtain financing. Because of Debtor's lack of income and financial records, any proposed plan would not be feasible in this case. Confirmation of a proposed plan requires a determination regarding feasibility of the plan. See, 11 U.S.C. 1129(a)(11). Debtor can not provide a reasonable assurance of success when Debtor is not a viable entity and the likelihood of third party financing is speculative at best. Further, any plan that would involve payments to First Baptist is clearly not feasible, as Debtor can not even make minimum debt service payments with no income, much less make such payments while providing for reserves for maintenance as well as insurance on the Property. Finally, Debtor has alleged that Pentecostal made all of the payments on First Baptist's loan prior to the balloon date (Document No. 1); assuming, as Debtor has no income, that Pentecostal would again make periodic payments under any plan, it would

also be unfeasible to base the success of such plan on payments from a third party, even if that third party (Pentecostal) is Debtor's alter ego.

22.    In addition to the unfeasibility of any potential plan, Debtor must also meet the "cramdown" requirements of §1129(b). In this case, First Baptist would have to either receive deferred cash payments totaling at least the allowed value of First Baptist's interest in the Property, 11 U.S.C. §1129(b)(2)(A)(i)(II), or the realization of the "indubitable equivalent" of its claim, 11 U.S.C. §1129(b)(2)(A)(iii). As discussed at length above, Debtor lacks the income to make the required deferred cash payments over a reasonable time. Further, Debtor's lack of income aside, any plan forcing First Baptist to accept deferred cash payments totaling the allowed value of First Baptist's claim would be neither be fair nor equitable, as First Baptist's promissory note has already ballooned. See, 11 U.S.C. §1129(b)(1). Finally, Debtor can not provide an indubitable equivalent of First Baptist's claim, as Debtor has no other assets to satisfy First Baptist's claim. There is no reasonable likelihood of Debtor effectuating a confirmed plan.

**Conclusion**

23.    First Baptist has established cause for dismissal. No unusual circumstances are present establishing dismissal is not in the best interests of the creditors and the estate. This case is clearly a two party dispute involving a single, non-revenue generating asset. Debtor's hopes for refinancing are speculative, at best, and there is no feasible plan that Debtor can propose, as there is no income, no financial records and no business activity that will allow Debtor to rehabilitate while protecting against the continuing diminution to the estate. Accordingly, the totality of the circumstances are such that dismissal is appropriate and in the best interests of creditors and the estate.

WHEREFORE, First Baptist Church of Eustis, Inc. respectfully requests the entry of an Order dismissing the above captioned Chapter 11 case with prejudice, along with such other relief as the Court deems necessary and proper.

CAMPIONE & HACKNEY, P.A.
Attorneys for First Baptist Church of Eustis, Inc.


/s/ David T. Oliver
David T. Oliver
Florida Bar No.56638
2750 Dora Avenue
Tavares, Florida 32778
Telephone:  352-343-4561
Telefacsimile:  352-343-7456
doliver@campionehackney.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on February 13, 2012, a true and correct copy of the foregoing Motion to Dismiss was served through the CM/ECF System for the United States Bankruptcy Court for the Middle District of Florida to:

Robert E Bone, Jr                 United States Trustee- Orlando
Robert E Bone, Jr P.A.            135 West Central Boulevard
701 West Main Street              Suite 620
Leesburg, FL 34748                Orlando, FL 32801


The undersigned further certifies that on February 13, 2012, a true and correct copy of the foregoing Motion to Dismiss was served by first class U.S. Mail to:

Robert E Bone, Jr
Robert E Bone, Jr P.A.
701 West Main Street
Leesburg, FL 34748

Miriam G. Suarez
United States Trustee- Orlando
135 West Central Boulevard
Suite 620
Orlando, FL 32801

Jesus Holiness Church, Inc.
20 Sun Country Court
Eustis, Florida 32726-6947


                                        /s/ David T. Oliver
                                        Attorney